UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SARAH A. GUBANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:20-cv-00632-AGF |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This action is before this Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Sarah Gubany was not disabled, and thus not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.  For the reasons set forth below, the decision of the Commissioner will be affirmed.

## BACKGROUND

The Court adopts the facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 15), all of which Defendant admits (ECF No. 16-1), which facts provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff was born on June 17, 1985, holds an associate's degree, and previously

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, she is substituted as the Defendant in this suit.

worked as a veterinary assistant, sales representative, cashier, veterinary technician, and pet care associate. Plaintiff originally filed an application for disability insurance benefits on January 8, 2018, alleging a disability beginning December 5, 2017, due to hypothyroidism, muscle spasms, pain, depression, anxiety, borderline personality disorder, chronic fatigue, fibromyalgia, and arthritis of the low back. Her application was denied at the administrative level, and she thereafter requested a hearing before an Administrative Law Judge (ALJ). On May 9, 2019, the ALJ heard testimony from Plaintiff, who was represented by counsel, and from a vocational expert (VE). On August 1, 2019, the ALJ issued a decision finding that Plaintiff had the residual functional capacity (RFC) to perform certain jobs that exist in significant numbers in the national economy and was thus not disabled under the Act. The ALJ found that Plaintiff had the RFC to perform a reduced range of sedentary work as defined by the Commissioner's regulations, except for the following limitations:

> … she could lift and carry and push and pull ten pounds occasionally and less than ten pounds frequently. She could sit for six hours in an eight-hour workday. She could stand and/or walk two hours in an eight-hour workday. She could occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, and crawl. She required avoidance of working at unprotected heights and the use of hazardous machinery. She required less than occasional exposure to extreme cold. She was limited to simple, routine and repetitive tasks with no production rate quotas and only few changes in the work setting. She could occasionally interact with supervisors and coworkers, but with no contact with the general public.

Tr. 15.

The ALJ next found that Plaintiff could perform certain sedentary unskilled jobs listed in the Dictionary of Occupational Titles (DOT) (e.g., election clerk, washroom

2

operator, nut sorter), which the VE had testified that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act. On April 13, 2020, the Appeals Council denied Plaintiff's request for review. Thus, Plaintiff has exhausted her administrative remedies, and the ALJ's decision is the final decision of the Commissioner for this Court's review.

In her sole point of error, Plaintiff asserts that the Commissioner's decision lacks substantial evidence to support a finding that Plaintiff is able to perform the jobs identified by the VE because the VE was mistaken about the demands of the jobs she cited.

**The ALJ's Decision (Tr. 10-24)**

Medical Evidence

As Plaintiff does not challenge the ALJ's findings with respect to her medical impairments, the Court summarizes the ALJ's decision in that regard only to the extent useful for general context. The ALJ found that Plaintiff has the following severe impairments: obesity, degenerative joint disease of the knee, fibromyalgia, chronic fatigue syndrome, depression, anxiety, and borderline personality disorder. However, she found that none of these impairments, alone or in combination, met or medically equaled the severity of impairments listed in the Commissioner's regulations.[2] Applying

---

[2] The ALJ further noted non-severe impairments of hepatic steatosis and hypothyroidism.

"paragraph B" criteria to Plaintiff's mental impairments, the ALJ found that Plaintiff had only moderate limitations in each of the four categories (i.e., understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself).

Plaintiff and her husband submitted function reports indicating that Plaintiff needs some help with personal care and activities of daily living. Tr. 201-208, 223-233. She is able to drive and shop online. She watches television, plays video games, reads, and occasionally socializes with friends. She does not pay bills or keep a checkbook because she gets easily frustrated or confused. She testified that she can prepare simple meals; she needs help getting in and out of the bathtub; she sometimes takes out the dog; she uses a computer; she takes pain medication; she suffers from depression; and she has no energy. Tr. 36-41.

Treatment records from March 2016 to January 2018 with Dr. Denise Buck reflect that Plaintiff is morbidly obese and suffers from hypothyroidism and fibromyalgia. Tr. 310-323. She takes hormone therapy for her thyroid and hydrocodone for pain. Her examinations were essentially normal. Dr. Buck encouraged Plaintiff to exercise and improve her diet. Treatment records from December 2016 to February 2019 with a pain specialist, Dr. Vivek Manchanda, reflect treatment for chronic pain. Tr. 337-393, 517-569. She had 18/18 tender points for fibromyalgia, a mild narrowing of her knee joints, and a mild disc bulge in her spine. Treatment records from May 2017 to February 2019 reflect treatment by an endocrinologist, Dr. Rachel Fishman Oiknine, for hypothyroidism. Tr. 295-302, 571-598. Treatment records from May 2017 to January 2018 reflected care

4

with a psychiatrist, Dr. Miggie Greenberg, for borderline personality disorder and depression. Tr. 401-495.

The ALJ then discussed at length the standards applicable to fibromyalgia. Tr. 19-20. She noted that Plaintiff was diagnosed by an acceptable medical source and exhibits widespread and persistent pain. However, the ALJ also noted that the medical records do not document that Plaintiff's pain is so severe as to preclude the use of full strength or motion or result in atrophy. Accordingly, the ALJ concluded that, while Plaintiff's fibromyalgia was severe, it did not impose limitations more restrictive than those incorporated into the RFC. The ALJ also noted that Plaintiff's chronic fatigue did not result in atrophy or cognitive dysfunction according to the medical evidence. She further observed that no objective medical evidence indicated a significant deficit in Plaintiff's knee limiting her ability to walk or stand, and that Plaintiff's use of a cane did not appear to be prescribed or required.

Next, the ALJ referred to the opinions of state agency examiners. Tr. 87-101. With respect to Plaintiff's physical impairments, Dr. Paul Spence concluded that Plaintiff had the RFC to perform light work. The ALJ relied on this opinion only as supportive of a finding that Plaintiff was not totally disabled, but she did not find Dr. Spence's specific RFC assessment persuasive given later treatment records. With respect to Plaintiff's mental impairments, Dr. Martin Isenberg concluded that Plaintiff had only moderate functional limitations and retained the ability to perform simple, repetitive work with limited social contact. The ALJ found this opinion persuasive and consistent with the overall record. The ALJ further noted that the record did not reflect psychiatric

5

hospitalization, ongoing therapy, or cognitive deficits.  Finally, the ALJ noted that Plaintiff is not always compliant with her medications and treatment recommendations.

Ultimately, the ALJ found that, although Plaintiff's impairments could reasonably be expected to cause her symptoms, Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.  The ALJ concluded that an RFC of unskilled sedentary work, with the physical limitations previously described, was consistent with the medical evidence.

VE Testimony

The ALJ then referred to the VE's testimony centrally at issue here.  At the administrative hearing, the ALJ asked the VE if there were jobs in the national economy for a hypothetical person with Plaintiff's RFC and limitations.  The VE identified representative jobs of election clerk (DOT 205.367-030), almond blancher (DOT 521.687-010), and nut sorter (DOT 521.687-086).  The hearing transcript reflects the following discussion.[3]

| | | |
|---|---|---|
| ALJ: | | And just for clarification, the election clerk, that doesn't require more contact with the general public, or does that have, is that limited contact? |
| VE: | | It's limited.  There is some contact, but it's limited … |
| | | * * * |
| Counsel: | | … on the election clerk job, you did say that it had limited public contact, correct? |
| VE: | | Um, yes, yes. |

---

[3] Excerpts from the transcript have been slightly edited for readability and relevance to the discrete issue before the Court.

| | |
|---|---|
| Counsel: | So, if the hypothetical was no public contact, that would eliminate that one, right? |
| VE: | That's correct. |
| Counsel: | Okay, now, almond blancher. I've never heard of that one. Is that a sit-down job? |
| VE: | It is. |
| Counsel: | And what exactly does that person do? I've never heard of that. |
| VE: | They observe blanched almonds on the conveyor belt and remove skins of the almonds. |
| Counsel: | And now that would be somewhat of a production rate pace, would it not, if it has a conveyor belt? |
| VE: | Per the DOT, it is routine. |
| Counsel: | But you'd have to keep up with the conveyor belt, correct? It's not like you can stop the conveyor belt and take a break and then move on, right? You'd have to keep up with it. |
| VE: | Well, you would have to keep working, yes. … But I don't know that there is an actual production to this type of job, you know, as far as X amount of almonds per hour or that kind of thing. |
| | * * * |
| ALJ: | From my limitations, I was eliminating assembly line work. And from what you're describing, that sounds kind of like production rate pace since it's not assembly line work, but I guess the point is low stress, and if there is an assembly line or there's a conveyor belt, then I guess the stress of having to keep up with that … that doesn't really fit [with] where I'm going. … Do you have another, an alternative job then for that? |
| VE: | … That's going to be washroom operator. … |
| | * * * |
| Counsel: | Now, a nut sorter would probably be the same kind of work as an almond blancher, correct, in terms of production? |
| VE: | … Yes, sir, that is correct. |
| Counsel: | Okay, what does a washroom operator do? |
| VE: | … Tending to washing equipment, starts the washing |

7

| | |
|---|---|
| | equipment, regulates water flow through the washing bath, using a telephone, draining water from the bath, cleaning debris from the bath. |
| Counsel: | Now, that doesn't sound like sedentary work to me. Is it listed as sedentary? |
| VE: | It is. |
| Counsel: | Ok, so they can do all of that in a seated position? |
| VE: | According to the DOT, yes. |
| Counsel: | What about according to your professional opinion? |
| VE: | These are all sit/stand positions that I have provided, so they could be done either sitting or standing. |
| Counsel: | So, would it be possible, though, for the washroom operator to have to stand more than 2 hours in an 8-hour day? |
| VE: | It's possible. I don't know for certain of that, sir. |
| Counsel: | Okay. And is there any public contact with that job? |
| VE: | No, sir. |
| | * * * |
| ALJ: | … Is the testimony you've given today consistent with the DOT and the SCO? |
| VE: | Yes, Ma'am. …. |

Based on the foregoing, the ALJ found that Plaintiff could perform certain sedentary unskilled jobs listed in the DOT (e.g., election clerk, nut sorter, washroom operator), which the VE had stated that a hypothetical person with Plaintiff's RFC and vocational factors (age, education, work experience) could perform and that were available in significant numbers in the national economy. Accordingly, the ALJ found that Plaintiff was not disabled under the Act.

In her brief before this Court, Plaintiff argues that the ALJ's decision lacks substantial evidence to support a finding that Plaintiff could perform the jobs cited by the VE because the VE was mistaken about the demands of those jobs. Plaintiff asks that the

ALJ's decision be reversed and remanded for an award of benefits or further evaluation.

## DISCUSSION

**Statutory Framework**

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months.  42 U.S.C. § 423(d)(1)(A).  The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability.  The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity.  If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments.  A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(c).  A special technique is used to determine the severity of mental disorders.  This technique calls for rating the claimant's degree of limitations in four areas of functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant

9

cannot perform his past relevant work, the burden of proof shifts to the Commissioner at step five to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience. *See, e.g., Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010). When a claimant cannot perform the full range of work in a particular category of work (medium, light, and sedentary) listed in the regulations, the ALJ must produce testimony by a VE (or other similar evidence) to meet the agency's burden at step five. *See Baker v. Barnhart*, 457 F.3d 882, 894 (8th Cir. 2006).

**Standard of Review**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might accept as adequate to support a conclusion." *Id.* (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply

10

because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.* The Court "defer[s] heavily to the findings and conclusions of the Social Security Administration." *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015).

**Analysis**

In her sole point of error, Plaintiff contends that the ALJ failed to meet her burden at step five of the evaluation process to identify appropriate representative jobs for Plaintiff because the ones cited by the VE were not suitable.

In her decision, the ALJ referred to the VE's testimony that Plaintiff could perform the jobs of election clerk, nut sorter, and washroom operator and concluded that the VE's testimony was consistent with information in the DOT. Plaintiff notes that the job of election clerk requires some contact with the general public, which the ALJ eliminated, and may also be part-time and seasonal, which may not satisfy SSR 96-8p requiring full-time work.[4] Similarly, the job of nut sorter involves work on a conveyor belt, which the ALJ also eliminated. The Commissioner concedes that these jobs are not consistent with Plaintiff's RFC but submits that the ALJ committed no error because the third job of washroom operator properly accommodates Plaintiff's RFC.

Plaintiff acknowledges that even just one appropriate job listing is sufficient to support an ALJ's decision. *See e.g., Weiler v. Apfel*, 179 F.3d 1107, 1111 (8th Cir. 1999)

---

[4] SSR 96-8p characterizes the RFC as a claimant's maximum ability to do sustained work activities in an ordinary work setting on a "regular and continuing basis," meaning 8 hours a day, for 5 days a week, or an equivalent work schedule.

(holding that one appropriate listing constituted substantial evidence); *Flynn v. Berryhill*, 4:16 CV 1927 CDP, 2018 WL 1410233, at *6 (E.D. Mo. Mar. 21, 2018) ("In order to meet his burden at Step 5 of the sequential analysis, the ALJ need only identify one occupation that exists in significant numbers that a claimant can perform with his RFC.") (citing *Weiler*, 179 F.3d at 1110). However, Plaintiff contends that the job of washroom operator is insufficient to support the ALJ's decision here because the job description appears to conflict with her RFC limitations.

Although the hearing transcript does not reflect the specific nature of this job listing, the precise language of DOT 529-665.014 clarifies that it entails the cleaning of sugar beets in an industrial food processing environment. It states:

> Tends beet washing equipment and elevators that clean sugar beets preparatory to slicing: Starts elevators and washing equipment and turns valves to regulate water flow through washing vat. Signals FLUMER (sugar & conf.) I [sic] to adjust flow of beets in flume,[5] using telephone. Turns valves to drain water from washing vat. Cleans debris from vat, using water hose.[6]

Based on this description, Plaintiff asserts that this job listing may involve tasks beyond her RFC, such as standing more than two hours in an eight-hour shift, using hazardous equipment, and meeting production quotas as to the volume of beets washed. Plaintiff also speculates that the work may be seasonal, corresponding to a fall harvest. Plaintiff submits that the ALJ failed to adequately question the VE about the

---

[5] A flume is an inclined chute or trough used to direct water or objects. See e.g., Flume, Collins Online Dictionary, https://www.collinsdictionary.com/us/dictionary/english/flume, last visited September 1, 2021.

[6] 1991 WL 674629.

inconsistencies in her testimony and had no basis to find her credible as to this listing given that the VE's three other job proposals were unsuitable. In response, the Commissioner argues that the DOT description for washroom operator is consistent with the RCF in that it indicates a sedentary exertion level and imposes no production quotas, seasonal limitations, or exposure to vibrations or mechanical parts.

Under SSR 00-4p, the ALJ has an affirmative responsibility to ask about any possible conflict between VE evidence and the DOT and its companion publication, the Selected Characteristics of Occupations (SCO), on the requirements of a job or occupation before relying on VE evidence to support a determination of not disabled. *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (reversing where the record lacked any indication that the ALJ and VE recognized a conflict between the hypothetical and the DOT listing). The ALJ is not absolved of the duty to explore possible conflicts merely because the VE responds "yes" when asked if her testimony is consistent with the DOT. *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014).

Based on the above DOT description and the general nature of food processing occupations contained in section 529 of the DOT, Plaintiff's concerns as to the suitability of this listing are somewhat understandable.[7] The hearing transcript lacks any inquiry as to the specific physical demands and environmental conditions of a washroom operator as

---

[7] The listing for washroom operator reflects a Date of Last Update (DLU) of 77, meaning 1977. Dictionary of Occupational Titles (4th Ed., 1991), Occupational Group Arrangement, Chapter 5, Processing Occupations, 529.665-014. https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOT05C, last visited September 3, 2021. This listing falls under Guide For Occupational Exploration Group 06.04.15 titled Equipment Operation, Food Processing.

13

the job is described in the DOT and coded in the SCO, and neither party offers additional authority on the question in their respective briefs. However, the VE confirmed that, according to the DOT, this is a sedentary job that could be performed in a seated position. According to the SCO for this listing, "vibration" and "moving mechanical parts" are "not present – activity or condition does not exist." 1991 WL 674629. The Court finds nothing in the DOT or SCO to support Plaintiff's contention that this job involves prolonged standing or hazardous machinery. Similarly, the DOT and SCO for this listing do not reflect any production quotas or seasonal limitations that, by contrast, are apparent in the plain language of other listings discussed at the hearing.[8] As such, while ideally the record could have been further developed with respect to Plaintiff's present concerns (and Plaintiff had ample opportunity to do so herself through counsel), the Court finds no clear inconsistency prescribing reversal. On the contrary, the Eighth Circuit has repeatedly held that, when there is no apparent unresolved conflict between the VE's testimony and the DOT, then the ALJ may properly rely on the testimony. *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (citing *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010). Unless a VE's testimony appears to conflict with the DOT, there is no requirement that an ALJ inquire as to the precise basis of the VE's testimony. *Courtney*, 894 F.3d at 1004 (where the VE testified about information outside the DOT). On the present record, the Court finds no apparent conflict between the DOT

---

[8] By comparison, DOT listings expressly state that the jobs of almond blancher and nut sorter are performed on a conveyor belt (DOT 521.687-010 and 521.687-086), and the duties of an election clerk are performed only during elections (DOT 205.367.030).

and the VE's testimony that would mandate further inquiry by the ALJ pursuant to SSR 00-4p and Eighth Circuit precedent.

Finally, Plaintiff argues that the ALJ should not have relied on the VE's testimony that there were 13,000 washroom operator jobs in the national economy because the VE's other testimony was not credible. But the Court defers to the ALJ's determination of witness credibility as long as the testimony is supported by substantial evidence, *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005), and the VE properly relied on job data contained in the DOT, which constitutes substantial evidence. *See* C.F.R. § 404.1566(d) (permitting the agency to take administrative notice of job information in the DOT); *Clerk v. Berryhill*, 4:16-CV-1552 CAS, 2018 WL 4593564, at *7 (E.D. Mo. Sept. 25, 2018) (finding substantial evidence from DOT data). There is no basis for the Court to question the ALJ's finding with respect to the number of available jobs.

## CONCLUSION

The VE's testimony did not conflict with the DOT job description so as to create any inconsistency necessitating further exploration by the ALJ under SSR 00-4p. Absent any such conflict, the ALJ did not commit reversible error by failing to inquire about the specific demands and conditions of the washroom operator listing. To the extent Plaintiff now raises concerns about potential limitations, she had ample opportunity to develop the record herself at the time of the hearing. On the present record, however, the Court cannot say that the ALJ's decision was outside the available zone of choice.

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.

A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 8th day of September 2021.